IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOVAN BROWN, by his next friend )
KESHA BROWN, )
 )
                 Plaintiff, )
 )
     v. ) Case No. 05 C 1217
 )
JO ANNE B. BARNHART, )
Commissioner of Social Security )
Administration, )
 )
                 Defendant. )

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

     Jovan Brown, whose mother Kesha Brown has sued on his behalf, appeals the denial of Supplemental Security Income benefits by a Social Security Administration administrative law judge. Both parties have moved for summary judgment. For the reasons stated below, the Court grants plaintiff's motion and denies defendant's motion and remands the case to the Social Security Administration for further proceedings.

**Facts**

     Jovan was six years old when his mother applied for SSI benefits and nine years old when the ALJ denied the application. He suffers from a profound hearing loss in his left ear, attention deficit hyperactivity disorder, and a learning disorder. R. 23. A well-behaved student, Jovan had difficulty in reading, math, and spelling and had to repeat the first grade. R. 119. To assist Jovan with his academic pursuits, he was enrolled in special education classes. His individualized education program provided for 400 minutes of weekly special education services

while Jovan was in second grade and 1200 minutes of special education services in a separate education classroom when Jovan was in the fourth grade. R. 136, 194.

Jovan was in the first grade during the 2000-01 academic year. On November 11, 2000, he was assessed for speech and language delay by a therapist at Schwab Rehabilitation Hospital. R. 155-57. The therapist concluded that Jovan scored below average for his age on certain standardized tests. R. 156. The therapist concluded that Jovan's speech was 100% intelligible but that he was easily distracted and needed frequent redirection to stay on task. *Id.*

On May 2, 2001, Jovan was evaluated by Robert Zagar, a school psychologist. R. 174-75. Dr. Zagar tested Jovan using eight different standardized assessment tools. R. 174-75. Based on this testing, Dr. Zagar concluded that Jovan's results reflected a learning difficulty and "achievement below age, ability and grade level." R. 175.

In 2002, Jovan was promoted to the second grade, though school records indicate that he was still performing at the first grade level in language arts and math. R. 134-35. Jovan's second-grade teacher reported that his attention span was very short and that he seemed to have problems focusing on his work. R. 127. Jovan's teacher also noted that second grade was difficult for Jovan and that sometimes, when he got frustrated, he would put his head down and refuse to listen or do any work. *Id*. Jovan sat at the front of the classroom to help compensate for his unilateral hearing loss, played games and got along with his classmates, and his report card indicated no problems accepting his teacher's guidance or following class routines. R. 22.

Dr. Zagar evaluated Jovan again on September 20, 2004. He found that Jovan had deficits in short-term memory, math, reading, spelling, visual motor integration, impulse control, attention and concentration. R. 205. Dr. Zagar also noted that Jovan was two to three years

2

below ability, age and grade-expected functions. *Id.*

The evidence before the ALJ also reflected that Jovan was a helpful older brother and was able to learn CPR so he could help with a disabled sibling. *Id.*

**The ALJ's decision**

To be considered disabled and therefore eligible for SSI benefits, Jovan must prove that he has a "physical or mental impairment, which results in marked and severe functional limitations, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether Jovan suffered from a disability, the ALJ employed the three-step sequential process mandated by 20 C.F.R. § 416.924(d). This three-step inquiry required the ALJ to evaluate (1) whether Jovan was engaged in substantial gainful activity; (2) whether he had a medically determinable severe impairment or combination of impairments; and (3) whether his impairment) met, medically equaled, or functionally equaled the requirements of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P., App. 1. *See, e.g. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003).

First, the ALJ found that Jovan had not engaged in substantial gainful activity during the period covered by his SSI application. R. 23. Second, the ALJ found that Jovan's hearing impairment, attention deficit hyperactivity disorder, and learning disorder established the existence of at least one, medically determinable, severe impairment, or its equivalent. R. 20, 23. The dispute in this case arises from the third and final step, where the ALJ found that Jovan's impairments did not functionally equal a listed impairment. R. 23.

To determine whether a claimant's impairments functionally equal the listings, the ALJ

evaluates six broad areas, called "domains." Functional equivalence may be established if the claimant has an "extreme" limitation in any one of the six domains or "marked" limitations in at least two of these domains. *See* 20 C.F.R. § 416.926a. The ALJ determined that Jovan did not have an extreme limitation in any of the domains and that he had a marked limitation in one domain – attending and completing tasks – but less than marked limitations in the five remaining domains: acquiring and using information, interacting and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being. R. 22, 23.

**Discussion**

Jovan argues that the ALJ's decision is erroneous for three reasons. He claims the ALJ misstated the testimony of the medical expert in psychology and then relied upon this misstatement in finding he was not disabled; he argues that the ALJ did not confront significant evidence that did not support his conclusion; and he contends that the ALJ's finding that Jovan does not have a marked limitation in the domain of acquiring and using information is not supported by substantial evidence. The Court agrees with the first two of these arguments and concludes that a remand is appropriate.

Dr. David Biscardi, an expert in psychology, testified at the hearing on whether Jovan's impairments singly or in combination met or equaled the requirements discussed above. Dr. Biscardi reviewed Jovan's most recent psychiatric evaluation, his Stanford Binet composite IQ score, and his results on the Wide Range Achievement Test - III, a test of academic functioning. R. 221-22. Dr. Biscardi concluded that Jovan suffered from a significant learning disability, ADHD, severe distractibility, and poor concentration. R. 222. He opined that none of those conditions medically equaled a listing. *Id.*

4

Dr. Biscardi concluded, however, that the evidence suggested that Jovan's impairments functionally equaled the listing. He opined that Jovan was markedly limited in the domain of attending and completing tasks. *Id.* Dr. Biscardi also evaluated Jovan's limitations in the domain of acquiring and using information. Taking all the evidence into account, Dr. Biscardi concluded that if the effects of Jovan's unilateral hearing loss, learning disability, and marked deficit in the domain of attending and completing tasks were combined, Jovan had a "marked deficit in [the domain of] acquiring and using information." R. 223.

In his decision, the ALJ stated that "[b]ased solely upon the percentile on the Iowa test scores, [Dr. Biscardi] opined that the domain of acquiring and using information could be rated as 'borderline' marked." R. 21. If the ALJ were simply recounting what Dr. Biscardi said about the significance of Jovan's Iowa test results, his statement would have been correct. *See* R. 222-23. But it is apparent from the context of the ALJ's ruling that that is not the import of his statement. Rather, the ALJ appears to be saying that Dr. Biscardi reached a conclusion that Jovan had a "borderline marked" limitation based just on his Iowa test results.

That is not an accurate reading of Dr. Biscardi's testimony – in particular Dr. Biscardi's continuation of the very statement to which the ALJ made reference. In the next sentence of his testimony following his discussion of the Iowa test results, Dr. Biscardi stated that

> when you add the effect of, albeit a [unilateral] hearing loss, I had the opportunity to observe the claimant today and ... his interactions with his mother. There were periods where he had great difficulty. Questions needed to be repeated. Or if he wasn't looking directly at her, had difficultly recalling. *So from my perspective, Your Honor, taking all things into account, the claimant does, in fact, present with marked deficit in attending and completing tasks, and in my opinion, based on the learning disability, would have marked deficit in acquiring and using information.*

R. 223 (emphasis added).

5

The Court concludes that the ALJ's statement that Dr. Biscardi concluded that Jovan's deficit in acquiring and using information "could be rated as 'borderline' marked," R. 21, amounts to a misstatement of the expert's testimony. The ALJ's conclusion, contrary to that of the medical expert, that Jovan's deficit was borderline and not marked violates the well-settled principle that an ALJ may not "substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Boiles v. Barnhart,* 395 F.3d 421, 425 (7th Cir. 2005). At a minimum, the ALJ, in reaching a conclusion contrary to that of Dr. Biscardi, failed to confront head-on the medical expert's testimony that did not support his decision. *See, e.g., Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004); *Brindisi v. Barnhart,* 315 F.3d 783, 786 (7th Cir. 2003).

In finding that Jovan's deficit in acquiring and using information was less than marked, the ALJ cited the following evidence: the Stanford Binet test administered by a school psychologist, which the ALJ said resulted in "dull to normal, visual-abstract, quantitative, memory and composite scores"; "psychological testing," as evidence that Jovan was "able to listen to and follow instructions"; and Jovan's ability to make telephone calls using his right ear, play games, and correctly perform simple addition and subtraction tasks. R. 22. However, the ALJ did not mention in his ruling other evidence that pointed toward a different conclusion: statements contained in Jovan's individualized education program indicating that his reading achievement remained at a kindergarten level, R. 119, and a teacher's report indicating that Jovan was behind in all second grade skills. R. 127. Perhaps more importantly, the ALJ did not refer to any of the other tests (in addition to the Stanford Binet test) that Dr. Zagar used to evaluate Jovan's impairments. Specifically, the ALJ did not address the results of Jovan's Wide

Range Achievement Test - III, which indicated that he "read, wrote, and spelled at the kindergarten level with intelligence-quotient-equal standard-scores in the borderline delayed range," or his Halstead Test, which indicated his problems with copying a figure (construction apraxia), reading, spelling, and math. R. 175.

As the Seventh Circuit has stated, "[t]he ALJ had a duty to acknowledge potentially dispositive evidence, since 'the ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do.'" *Brindisi*, 315 F.3d 786-87 (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)). ruling in this case contravened that principle in two significant respects: the ALJ did not confront Dr. Biscardi's squarely stated opinion that Jovan had a marked deficit in acquiring and using information, and in (apparently) rejecting that opinion *sub silentio,* the ALJ made no mention of the other evidence that was contrary to his conclusion.

For these reasons, the Court reverses the denial of benefits and remands the case to the ALJ.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion for summary judgment [docket no. 14] and denies defendant's motion for summary judgment. Pursuant to 42 U.S.C. § 405(g), the Court remands the case to the Social Security Administration for further proceedings consistent with this order.

_____
MATTHEW F. KENNELLY
Date: February 21, 2006          United States District Judge

7